TRULINCS 42333054 - SNYPE, VERNON - Unit: ALM-B-B

---

FROM: 42333054
TO:
SUBJECT: RESPONSE TO OPPOSITION
DATE: 02/08/2021 08:12:25 AM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VERNON SNYPE,
      Defendant,

v.

UNITED STATES OF AMERICA
      Respondents.

MOTION FOR COMPASSIONATE
RELEASE OR SENTENCE
REDUCTION PURSUANT TO
18 U.S.C. 3582(C)(1)(A)

---

## RESPONSE TO THE GOVERNMENTS OPPOSITION

### OBJECTION

At this time, Defendant wishes to OBJECT to the Governments submission of their Opposition. The Court originally Ordered the Government to respond to Defendants motion by January 5th, 2021; Because the Government submitted their Opposition on January 19th, 2021, two weeks after the Ordered January 5th date, without requesting an extension of time, nor giving the Defendant the opportunity to object to an extension, Defendant submits, the Government's Opposition is untimely and therefore should be dismissed as waived.

### ARGUMENT

Should the Court over-rule my objection, I submit this Response to the Government's Opposition. The U.S Supreme Court, and the Second Circuit, ruled the offense of conviction "conspiracy" no longer qualifies as a crime of violence. The Government states the Second Circuit recently denied this argument. However, the recent Second Circuit Panel denied the argument based upon a previous Panel's decision rendered in 2006. However, defendant's who are sentenced {t}oday, are no longer subjected to enhanced penalties for conspiracy as a crime of violence. Additionally, the B.O.P. has eliminated the offence "conspiracy" to commit a crime of violence from the category defining {v}iolent offenses. See B.O.P. Violent Offense Code for PATTERN Risk Assessment. Although my robbery convictions remain crimes of violence, these offenses occurred over 40 years ago, and do not reflect my current behavior and characteristics.

I believe that I have demonstrated through my non-violent conduct in an extremely violent environment, a desire to return to society and be a productive member, assisting my family, as well as mentoring the youth about the mistakes I have made in life. My friend Mr. Hinton is the C.E.O. of a non-profit organization which I look forward to using as a platform to speak to the youth. I have learned through this period of incarceration, I am a good mentor, I try to give good advise, and the younger generation often seek me for questions, and follow my guidance. I can honestly say that my input and assistance at this facility, has decreased the number of fights and violence.

It is my hope's to bring this positive attitude to the community and try to give something back. I know first hand how difficult it is for the inner city youth, most of whom grow up with out a father figure, as I did. They need someone they can identify with, someone that has been down the road that they are heading. In sum, I believe I can be a positive influence, as opposed to a danger to my community.

### FAMILY CIRCUMSTANCES

The Government purports my desire to care for the mother of my children should be called into question because I stated that her previous behavior contributed to my current situation. Be that as it may, Laureen, nor myself, are



TRULINCS 42333054 - SNYPE, VERNON - Unit: ALM-B-B

------------------------------------------------------------------------

the same people we were twenty years ago. I have grown to learn and understand Laureen's illness: And Laureen's mental health has deteriorated to the point where she is incapable of caring for herself.

The Government implies Laureen's lack of trust and refusal of treatment would not change even if I were there. However, as indicated in my initial brief, Laureen was first diagnosed in early 2000; and, as further explained, she did not suffer another psychiatric episode or hospitalization over a four year period. Then Exactly three weeks after my trial ended in a conviction, Laureen lost our children and was hospitalized. The Government indicated Laureen's breakdown came several months after my conviction, {page 3 opposition}. However, I provided documents to show she lost our children November 3rd of 2003, which is three weeks after my conviction. Furthermore, the criteria requires me to prove that she is incapacitated, {Which the Government credits my assertions}, and that she has no other available family or friends to care for her, {Which the Government has not shown otherwise}. In an attempt to show Laureen has someone other than myself to care for her, the Government mis-states my claim. {opposition page 3} "defendant asserts that none of these family members can care for his ex-partner because, in light of his ex-partner's paranoia, "she will not trust anyone other than myself". In my initial brief I stated "Laureen has a brother and a sister, {whom both live in other states} and have provided no assistance through out Laureen's ordeal. Laureen has no known friends or family members {willing or capable} of caring for Laureen". Also the Government mentions Laureen has two adult children. In my initial brief, I explained due to my daughters mental illness, she is {incapable} of caring for her mother. I also explained our son Unique was adopted by a foster family and to my knowledge is still with the foster family under the care of the foster agency. I asked the judge, during the adoption hearing {via tele-conference} 2005, whether my son could maintain contact with me and his biological sisters and brothers; the judge denied my request. Neither Laureen nor I have spoken to our son since he was adopted. These are the reasons I proffered as to available family: They are unavailable because they are not here, not because Laureen does not trust them! Webster defines available as "readily obtainable, accessible".

Finally, even though a vaccine is being distributed, Laureen will be reluctant to take the shot. I was the only person able to convince her to take her medication. The fact that she will not listen to doctors is not unusual for a person with a mental illness. I am the only adult family that is capable and willing to care for Laureen; When she was first diagnosed, I administered and monitored her medication. It was easy because I did the same thing at the job where I worked with the mentally ill clients. I would ask Laureen if she took her pill, sometimes she would lie and say she did, I would then count her pills and note, that she did not take her pill for the day, she would laugh and comply. Laureen and I love each other dearly, and I am the only person Laureen will trust. In light of the fact that she has been diagnosed with Paranoid Schizophrenia, her lack of trust is not her fault, and should not be held against her.

On the date of December 22, 2020 I called to wish my mother a happy birthday, only to find that she was not feeling well, after speaking with the health-aid, she informed me that my mother was sick, but she didn't want to go to the hospital. I asked my mother why, and she said because they were not going to do anything. At that time I called my sister, and my sister took my mother to the hospital. My mother was hospitalized from December 23, 2020 until the day of January 3, 2020. On that day, my loving mother passed away. May she rest in Peace...

COVID UP-DATE

F.C.I. Allenwood has been classified as one of the four worst federal facilities to have contracted the virus. To date, there are reports of as many as 430 inmates as well as 47 staff members that have been infected. Despite the B.O.P. indications that the bureau is controlling the spread by isolation, this method is clearly not effective. Inmates such as myself, are in constant danger of contracting the virus, and there is no guarantee that everyone effected will recover. I have suffered from asthma since birth, while I am prescribed an asthma pump, the facility is ill equipped to provide treatment should I contract the virus. When my asthma pump gets low, I have to submit a slip of paper to the medical staff. I cannot leave my cell to go to sick call. I then have to wait any number of days before a new pump is delivered. My breathing is never checked, the medical staff come around once a week to check tempters, however, my ability to breath in these confined cells are never checked. My age 60, and my breathing conditions as well as documented iron deficient immune system {I am Anemic} decreases my chances of survival should I contract the virus. Additionally, the spread of the virus has increased the need to keep inmates confined to the housing units. This confinement, without fresh air, and lack of exercise, presents additional health concerns as they apply to blood pressure and weight gain. Approximately two months ago I saw my health care provider whom informed me for the first time, my weight, as well as my blood pressure is increasing.



TRULINCS 42333054 - SNYPE, VERNON - Unit: ALM-B-B

-----------------------------------------------------------------------------------------

## CASE LAW

The Government did not address the 3553(a) factors as they apply to my case, the Government merely provided the court with a summary of the instant offense, which covers factor (1) the nature and circumstances of the offense. and a summary of my previous convictions, which covers factor (2) defendant's personal history and characteristics {See opposition page 5}. When addressing defendants personal history, the government merely described prior robbery convictions that occurred over 40 years ago. See United States v. Clausen cited as 2020 U.S. Dist. LEXIS 143257 where the court properly addressed these factors. "Clausen's offenses were very violent, a firearm was used during each of the robberies, and in at least three of the jobs, a gun was discharged, Clausen struck one victim in the head with his gun...". In assessing the 3553(a) factors, the court went on to add "Clausen's underlying offense conduct must also be considered relative to the, sentence he originally received and any reduced sentence he would receive. {The Government in my case did not consider this factor} (3) The need for a sentence that reflects the seriousness of the offense, promotes respect for the law and provides just punishment for offense. The court in Clausen did, "Clausen has already spent over twenty years in prison, and represents, by all accounts, a substantial punishment that reflects the seriousness of his offenses and the need for both general and specific deterrence. Clausen's two decades of life spent behind bars also promotes respect for the law and provides just punishment for his crimes.

As to Clausen's personal history and characteristics, the presentence report prepared in 2001 shows... These facts however provide an outdated and incomplete glimpse into Clausen's personal history; they do not account for the astounding progress that he has made in the last two decades. Evidence of post sentencing rehabilitation may be highly relevant to several of the 3553(a) factors that congress has expressly instructed district courts to consider at sentencing. Indeed evidence of his conduct and rehabilitation since being in custody provides the most up to date picture of Clausen's personal history and characteristics. The court reduced Clausen's 213 year sentence for nine robberies and nine conspiracies to time served and three years supervised release. The court found that the combination of Clausen's remarkable record of rehabilitation and his off the chart sentence together establish extraordinary and compelling reasons to reduce his de facto life sentence.

The Government did not properly address my personal history and characteristics. The Government spoke about events occurring over 40 years ago. However, the occurrences that describe my characteristics doesn't stop in 1980 with my convictions. The Government failed to address the last 40 years of my life, as they failed to address most of the 3553(a) factors.



TRULINCS 42333054 - SNYPE, VERNON - Unit: ALM-B-B

----

FROM: 42333054
TO:
SUBJECT: RESPONSE TO OPPOSITION
DATE: 02/06/2021 06:27:33 PM

See United States v Martin 2020 U.S. Dist. LEXIS 122311 we consider "the history and characteristics of the person and consider the incarcerated person's character {b}eyond their criminal background". Furthermore, while the Government concedes Defendants rehabilitation efforts, the Government points out, rehabilitation alone does not meet the definition of extraordinary and compelling. While this statement is true, Senior District Judge Loretta A. Preska pointed out how defendant's with life sentences, that go on to display rehabilitation efforts, with no incentive "good time credits" other than self improvement... found such behavior to be extraordinary and compelling justifying reduction. See United States v. Millian 2020 U.S. Dist LEXIS 59955; and United States v. Panton 2020 U.S. Dist. LEXIS 138638 (same): And United States v. Torres 2020 U.S. Dist. LEXIS 95393 where the court granted compassionate release to two brothers largely due to their exceptional rehabilitation, despite both being sentenced to life without the possibility of parole.

   Other 3553(a) factors the Government failed to address (4) the need to afford adequate deterrence; in light of the fact that bank robbery carries a maximum sentence of 20 years, the Government could not argue 22 years did not serve as adequate deterrence. (5) the need to protect the public from further crimes by the defendant; See Martin id. "movant's fatherhood to four children persuaded the court to grant compassionate release... history of employment outside of prison". Furthermore, the B.O.P. scored me as low risk for recidivism, and statistics verifying recidivism significantly decreases in older adults after serving federal prison sentences. (6) release plan, where my supportive family and friends have offered housing, employment as well as assistance with the transition back into society. (7) need to avoid unwarranted sentence disparities; In light of the fact that conspiracy to commit a crime of violence no longer qualifies as a violent felony for purposes of enhancement, anyone serving a life sentence for a conspiracy offense, should be considered for a sentence reduction to avoid the significant disparity. (8) rehabilitation in addition to having a good disciplinary record: maintained contact with, and guided my three children throughout my entire term of incarceration as verified by their letters: mentored younger inmates in an attempt to keep both staff and inmates safe as verified from staff letters. (9) restitution paid to victims; in light of the fact that the entire amount of $13,500.00 has been paid in restitution, it is clear why the Government chose to avoid this as well as many other 3553(a) factors. Contrary to the Governments assertions {reducing his sentence would be inconsistent with 3553(a) factors} Opposition page 5. The 3553(a) factors favor a reduction. Which is exactly why the Government chose not to address them!

   United States District Judge J. Rakoff conceded the defenses position that "a 20 year sentence would reflect precisely the median sentence for the average murder imposed in federal court". See United States v. Rodriguez, 2020 U.S. Dist. LEXIS 181004 S.D.N.Y. where the court granted defendants motion for compassionate release, despite the brutal murder of a government witness. Also see United States Sentencing Commission report for 2019"average national sentence imposed for Murder was 255 months (21 years). Other defendants convicted of both capital and other violent crimes who had been sentenced to life have also had their sentences reduced: United States v Curtis, 2020 WL 1935542 at *1 (E.D. Pa. August 5, 2020)(releasing defendant under 3582(c)1)(A) despite his six concurrent terms of life imprisonment for operating a sex trafficking ring involving minors); United States v. Williams, 2020 WL 1751545 at *3 (N.D. Fla. Apr. 1, 2020)(granting release and reducing a life sentence for conviction of armed robbery). United States v Rios, 2020 WL 7246440 (D. Conn. Dec. 8, 2020), the court granted compassionate release to a defendant who was a member of the Latin Kings gang and was convicted of RICO conspiracy, a violent crime in aid of racketeering (murder), and conspiracy to posses with intent to distribute narcotics, for which he received three concurrent life sentences in 1995.

   Lastly, The Government mis-apprehended a comment made by the court during sentencing, "I agree that a life sentence is appropriate" {opposition page 5}. The Government mistakenly believes the Court's ruling is based on the 3553(a) factors, and suggest the court should apply the "same section 3553(a) factors used in 2004 to justify the sentence today". However, the court clarified the mis-understanding, {sentencing page 20} "I don't think that characterizes properly my ruling... I am deciding whether a life sentence is cruel and unusual". The Standard for Cruel and Unusual Punishment addresses {whether the sentence is grossly disproportionate} while the standard for 3553(a) addresses whether the sentence is {sufficient, but not greater than necessary}. Because Defendant faced a statutory mandatory minimum, the 3553(a) factors played a minimal role. See United States v. Millette 2020 Dist. LEXIS 239696 "(because of my obligation to impose the mandatory minimum, the 3553(a) factors were somewhat besides the point: I now review what I consider to be the applicable 3553(a) factors in the context of the defendant's motion)." Also see United States v Bess 455 F. Supp. 3d. 53 (W.D.N.Y.)(this court



finds no indication in the text of section 3582(C)(1)(A) that the courts are limited to offering compassionate release to those inmates who have satisfied their statutory minimum terms of incarceration).

   The First Step Act's amendment to the compassionate release/sentence reduction, provision allows courts the opportunity to re-visit those earlier decisions and apply the 3553(a) standard; which differ's from the cruel and unusual standard applied at sentencing. The 3553(a) standard calls for the court to impose a sentence sufficient, but not greater than necessary, to comply with its purpose. Most district courts have concluded, two decades in prison meets that definition, even for the most sever crime 'murder'.

   Wherefore, I pray that this Honorable Court find that my (1) Family Crisis {Children's Mother}; (2)Family circumstances {My Mother, My Kids and Grandkids}; (3) Rehabilitation; (4) Disparity of sentence compared with other conspiracy sentences; (5) Full Payment of Restitution; (6) Medical Condition; Age {my inability to comply with the doctors request of exercise and dieting to reduce gained weight and high blood pressure} (7)Covid-19; (8) Amount of time served (9) Remorse; all combined, meets the definition of extraordinary and compelling reasons to grant my motion for compassionate release, or sentence reduction.

   Sincerely requested,

Vernon Snype, Pro-se Defendant

cc: Patrick Moroney, Esq.
    U.S Attorney Office, SDNY
    One Saint Andrew's Plaza
    New York, N.Y. 10007

   Enclosed; please find a recent denial of a newly submitted compassionate release/sentence reduction request. The re-submission was due to the fact that I did not present my COVID-19 argument to the warden in my initial request. At the time I submitted the initial request, the facility did not have any active covid cases. Wherefore, I am now in full compliance with 3582(1)(C)(A). The government did not argue exhaustion, nevertheless I complied with the rules.



TRULINCS 42333054 - SNYPE, VERNON - Unit: ALM-B-B

----------------------------------------------------------------------------------------

FROM: 42333054
TO:
SUBJECT: LETTER FROM DEFENDANT
DATE: 02/07/2021 07:57:00 PM

FROM: Vernon Snype, Defendant

TO: Honorable Denny Chin: U.S. Circuit Judge

Date: February 7, 2021

RE: Compassionate Release/Sentence Reduction

---

Dear Justice Chin:

In a previously submitted declaration to the court, I confessed to my participation in the robbery/conspiracy. I chose to admit to my role, as a way of accepting responsibility for my actions. I never intended the Government to use the admission against me in an attempt to justify punishment. It defies logic, that a person admitting guilt, should be punished for it. It flies in the face of the old adlib "the truth shall set you free"!

Perhaps the Government is of the position, that I should have accepted responsibility prior to going to trial. However, it is my position that the Government failed to make a fair plea offer. The Court will note, I plead guilty to 3 robberies in State Court. One of the pleas subjected me to a sentence of Ten Years to Life {which was later vacated as an illegal sentence}. In the present case, the Government offered me 30 years imprisonment. For a person in their forty's, that is in essence a life sentence. When negotiating a plea, the Government should be fair and just. The average sentence for robbery in the federal system is ten years; to offer me a plea for three times the average sentence for robbery was anything but fair. I submit, if the Government would have offered me a fair sentence, I would have accepted the plea.

At this time, I want to present a portion from the Executive Order signed by President Biden on January 26, 2021.

"More than 2 million people are currently incarcerated in the United States, including a disproportionate number of people of color. There is a broad concencesus that our current system of mass incarceration imposes significant costs and hardship on our society and communities and does not make us safer... we must ensure that our Nation's incarceration and correctional systems are prioritizing rehabilitation and redemption. Incarcerated individuals should be given a {f}air chance to fully reintegrate into their communities..."

The Government, in their reply, acknowledged the fact that I met the criteria of an incarcerated person being rehabilitated. Yet, the Government goes on to recommend I spend more time in prison. If rehabilitation is the goal, and I have reached that goal, then it would seem, the need for further incarceration seeks a different goal. Either our system is designed for rehabilitation and redemption, or punishment and crucifixion.

I was released from state prison on work release in 1992; I found a job, maintained employment, paid taxes

TRULINCS 42333054 - SNYPE, VERNON - Unit: ALM-B-B

-------------------------------------------------------------------------------

and provided for my family as well as attended college up until the year of 2002. I believe that I earned a chance to reintegrate into the community and join my family.

Thank you for your thoughtful consideration.

Sincerely,

*[signature]*

Vernon Snype, Defendant

*page 2 of 2*

6-117

Name: Snype, Vernon
Reg. No.: 42333-054
Unit: 2B
Page 1

## Inmate Request to Staff Response

This is in response to your January 20, 2021, Inmate Request to Staff, wherein you request a Compassionate Release/Reduction in Sentence (RIS) due to the COVID-19 pandemic. Specifically, you indicate you have underlying medical conditions which put your health at risk.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§3582(c)(1)(A) and 4205(g)</u>, provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

Your request for Compassionate Release/RIS has been reviewed. Our records indicate you are 60 years old. You have not been diagnosed with a terminal or debilitating medical condition, and you are not disabled or unable to perform activities of daily living. Your condition does not diminish your ability to function in a correctional environment. The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence.

Based on the above information, your request for Compassionate Release/RIS is denied. If you are not satisfied with this response to your request, you may appeal this decision through the Administrative Remedy Process.

2/2/2021
Date

P. Gibson
Acting Warden

Vernon Snype 42333O
F.C.I Allenwood
P.O. Box 2000
White Deer, P.A. 17887

USMP3
SDNY

Jenny Chin:
U.S. Circuit Judge
U.S. District Court
500 Pearl Street
N.Y., N.Y. 10007

N.Y., N.Y. 10007

Crim
Ovr
SH

2021 FEB 26 AM 8:18

CERTIFIED MAIL


